# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

VERONICA FAIR,

    Plaintiff,

v.

TERRIBLE HERBST, INC., *et al.*,

    Defendants.

Case No. 2:05-CV-00651

**ORDER**

    Presently before the Court is Defendant's Motion for Summary Judgment (#21). Plaintiff filed a Response in opposition (#24) to which Defendant filed a Reply (#25).

**I. Facts**

    On May 24, 2005, Plaintiff Veronica Fair ("Fair") filed a Complaint (#1) against Defendants Terrible Herbst, Inc. ("Terrible Herbst"), Al Ryan ("Ryan" or "Mr. Ryan"), in his official capacity, and Beecher Whitaker ("Whitaker" or "Mr. Whitaker"), in his official capacity. The Complaint alleges five causes of action for which Fair demands monetary relief: (1) hostile work environment, (2) retaliation, (3) unlawful discriminatory practices under NRS 613.330 et seq., (4) negligent hiring/retention/supervision, and (5) the tort of outrage.

1    Defendant Terrible Herbst operates convenience stores in several states, including Nevada.
2 Plaintiff Fair was hired as a cashier for a Terrible Herbst convenience store in June 2003.  Originally,
3 Fair was assigned to work at a store located at Nellis Boulevard and Charleston Boulevard in Las
4 Vegas.  While working at this location, Plaintiff alleges that a co-worker called her a "nigger."  At
5 which point, Plaintiff used the company's internal complaint reporting hotline and reported the
6 incident to the Terrible Herbst Regional supervisor Beecher Whitaker.  Soon thereafter Plaintiff was
7 transferred to another store located at Nellis Boulevard and Twain Avenue (Store #136).
8    Plaintiff's deposition testimony alleges that upon commencement of employment at Store
9 #136, the store manager, Al Ryan, began to engage in discriminatory and harassing conduct such as
10 chasing Plaintiff around the store, telling improper jokes, touching her buttocks, and giving her
11 unwanted hugs.  Plaintiff however, failed to report the alleged improper activity at the time.
12    In approximately November of 2003, Mr. Ryan was transferred to Store #210, located at
13 Nellis Boulevard and Vegas Valley Drive.  Jim Hartwell ("Hartwell" or "Mr. Hartwell") took Ryan's
14 place as manager of Store #136.  At that time, due to staffing considerations, Hartwell asked
15 employees at Store #136 whether anyone would be willing to transfer to Store #210, the store where
16 Mr. Ryan was managing.  At that time, Plaintiff volunteered to transfer to Store #210.  Also, at that
17 time Plaintiff told Mr. Hartwell of Mr. Ryan's prior alleged behavior.  Hartwell informed Plaintiff to
18 contact him if she experienced any further concerns and he would transfer her back to Store #136.
19    After transferring to Store #210, Plaintiff claims that she experienced further problems with
20 Mr. Ryan.  Plaintiff asserts that a few weeks after her transfer to Store #210, she was attempting to
21 obtain  paperwork in relation to her child care costs.  Plaintiff states that she called Ryan regarding
22 the paperwork and he informed Plaintiff that she needed to come down to his office to pick it up.
23 Plaintiff felt that this behavior was improper and called the company's internal complaint line and
24 left a message for Mr. Witaker and also called Mr. Hartwell and informed him about the situation.
25 At that point, Mr. Hartwell informed the Plaintiff that he would leave the paperwork at Store #136
26 for her to pick up.

1     Shortly thereafter, Plaintiff claims that there was another improper incident involving Mr.
2  Ryan. According to Plaintiff, when Fair went to get her paycheck, Mr. Ryan put it down his pants
3  and told her to grab it. Plaintiff also claims that a week following the previous alleged incident, Mr.
4  Ryan tried to hug Plaintiff and inappropriately pushed against her to the point that she could feel his
5  penis. On that day, Plaintiff called Hartwell. She spoke to an employee at Store #136 (Michelle),
6  and to Hartwell. Immediately, Harwell sent the employee to give Plaintiff her paycheck, gave her the
7  remainder of her shift off, and asked her to report for work the next day at Store #136. Plaintiff
8  started working at Store #136 in December 2003.

9     Between December 2003 and January 2004, Store #136 was involved in a series of robberies.
10  During one of the robberies, over $900 in cash was stolen from the Terible Herbst registers. The fact
11  that there was over $900 in the registers was a direct violation of the company's policy that dictates
12  that only $100 to $150 in cash be allowed on the floor at one time. Defendant claims that this
13  incident, combined with the fact that over $18,000 in lost inventory was reported between December
14  2003, and January 2004 at Store #136 led to a company investigation of Store #136.

15     Pursuant to the investigation, Jim Hannah ("Hannah"), Director of Corporate Security, and
16  Debbie Henderson ("Henderson") conducted interviews with all employees of Store #136.
17  According to Hannah, the interviews revealed several instances of employee abuse including
18  numerous admissions of employee theft and unauthorized consumption of company products. As a
19  result, several employees were suspended, terminated, or resigned. The investigation also exposed
20  allegations of illegal drug activity going on at the location. Specifically, one employee made
21  accusations that Plaintiff had stolen products and engaged in drug activity.

22     Based on the information obtained from the interviews, Hannah, Henderson, and Whitaker
23  decided to observe Plaintiff's actions at work. On January 22, 2004, Hannah, Henderson, and
24  Whitaker arrived at Store #136 around 9:45 p.m. Upon arriving at the store, they noticed two
25  intoxicated individuals arrive at the store and ask for the Plaintiff, who was not yet present. Plaintiff
26  appeared at the location at 10:10 p.m., ten minutes late for her shift, and approached the two

intoxicated individuals and had a brief conversation with them before they were seen driving away erratically.

When Plaintiff entered the store, Hannah approached her and identified himself as the Director of Corporate Security for Terrible Herbst. Hannah claims that he noticed Plaintiff was not wearing her required work uniform, and that she didn't have her County-required work cards on her person, as required by company policy. Hannah also claims that Plaintiff's appearance was disheveled, her eyes were red, and that she had an unpleasant body odor. The three individuals, Hannah, Henderson, and Whitaker, asked to speak with Plaintiff in the back office and Plaintiff agreed. Once in the office, they explained that they were investigating Store #136 and questioned Plaintiff as to whether she had ever stolen or given away company products, or if she was involved in drug activity while at work. According to Defendants, at this point Plaintiff became very agitated and denied any allegations of wrongdoing.

Hannah, who claims to have extensive experience and skill in detecting drug use, suspected Plaintiff was under the influence of drugs, and requested that Plaintiff submit to a reasonable suspicion drug screen. Plaintiff refused to submit to a substance abuse test. According to company policy, if a reasonable suspicion is presented that an employee is using or under the influence of drugs and/or alcohol, the employee must submit to a drug test. Refusal to submit to a substance abuse test when required to do so is grounds for immediate disciplinary action, up to and including termination.

After refusing to take a drug test, Plaintiff became upset and started yelling at Hannah. Hannah then informed Plaintiff that she would be terminated if she refused to take the drug test. Plaintiff then allegedly shouted that she had just been fired, and left the store. Plaintiff was placed on suspension pending investigation for having refused to take a drug test. On January 27, 2004, Plaintiff was terminated for insubordination and refusal to submit to drug screening.

Plaintiff filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission and received a Notice of Right to Sue on February 23, 2005. Plaintiff now

claims that she experienced "stress" from her termination that resulted in hair loss and ulcers. Some time after her termination, Plaintiff allegedly went to the Fremont Medical Center on three occasions for treatment of hair loss and depression.

The immediate Motion for Summary Judgment (#21) was filed by Defendants on October 30, 2006. Defendants assert that Plaintiff's claims are without merit and fail as a matter of law. Plaintiff's Response to Defendants' Motion (#24) alleges many new, and somewhat contradictory facts about the case, however, the new facts and allegations are not supported by authenticating documents and/or certifying affidavits.

**II.  Standard of Law for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n., 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

issue of fact to defeat summary judgment). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

**III. Analysis**

B. Plaintiff's Causes of Action for Retaliation and Sexual Harassment

Plaintiff alleges sexual discrimination/harassment in violation of 42 U.S.C. § 2000e et seq. ("Title VII") and the Nevada counterpart, N.R.S. 613.330, asserting that Defendant subjected her to a sexually hostile work environment and then discharged her because she complained about it. Defendants move for summary judgment arguing that the Plaintiff's discrimination/harassment claims are without merit, and that Plaintiff cannot establish that Terrible Herbst's legitimate non-discriminatory reason for Fair's termination was pretextual. In the alternative, Defendant also argues that Plaintiff's claims fail under the Faragher/Ellerth affirmative defense.

2. Retaliation

To establish a *prima facie* case for retaliation, Plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). If a plaintiff asserts a *prima facie* retaliation claim, as in this case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision. See id. If the defendant articulates such a reason, the plaintiff then bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. See id.

1   Here, Plaintiff has asserted a *prima facie* case of retaliation against Defendant, however she
2   fails to demonstrate that Defendants' legitimate non-discriminatory reason for her termination is
3   pretextual.  Defendants have adequately demonstrated that they had a non-discriminatory reason for
4   Plaintiff's termination.  Namely, they discovered through their investigation into Store #136 that
5   Plaintiff may have been involved with drug activity and theft while at work, she showed up to her
6   shift late, disheveled, without her uniform, and without her required work cards.  Then, Plaintiff
7   refused to take a drug test when requested by her employer, who the Court believes had reason to
8   suspect Plaintiff was under the influence or using drugs.  According to Terrible Herbst policy, refusal
9   to take a reasonable suspicion drug test may result in termination.

10   Plaintiff does not debate that she did not take a drug test, and therefore admittedly, was
11   subject to termination according to Terrible Herbst policy.[1]  For these reasons, the Court finds that
12   Defendants did have a legitimate non-discriminatory reason for Plaintiff's termination, and Plaintiff
13   has failed to demonstrate that said reason is pretextual.  Therefore, the Court grants Defendants'
14   Motion for Summary Judgment as to Plaintiff's second cause of action for retaliation.

15   1.  Hostile Work Environment

16   Under Title VII, it is unlawful for an employer to discriminate against any individual with
17   respect to his compensation, terms, conditions, or privileges of employment because of his race,
18   color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2(a)(1).  To prevail on a hostile work
19   environment claim premised on either race or sex, a plaintiff must show: (1) that he/she was subject
20   to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and
21   (3) that the conduct was sufficiently severe or pervasive as to alter the conditions of the plaintiff's
22   employment and create an abusive work environment.  See Gregory v. Widnall, 153 F.3d 1071, 1074
23   (9th Cir. 1998).  Defendant has moved for Summary Judgment on Plaintiff's claim of sexual

---

[1] While Plaintiff's Reply argues that she took a drug test, Plaintiff has attached no evidence or affidavit certifying this alleged claim. Unauthenticated documents cannot be considered in a Motion for Summary Judgment. See, e.g., Orr v. Bank of Am., 285 F.3d 764, 784 (9th Cir. 2002).

7

discrimination based on a hostile work environment.  Defendant alleges that the environment suffered by Plaintiff was not sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment or create an abusive working environment.

The Supreme Court has suggested that District Courts consider "all the circumstances" of a Title VII violation claim to determine whether an environment is hostile or abusive, including the following factors; (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct is physically threatening, humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  See Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Here, Plaintiff has alleged that Mr. Ryan chased her around the store, joked with her inappropriately, touched her buttocks, put her pay check down his pants and told her to grab it, gave her unwanted hugs, and pushed against her to the point she could feel his penis.  Plaintiff has alleged inappropriate behavior that apparently occurred on a fairly frequent basis.  However, in view of other factors, the Court finds that the frequency of the conduct is not pervasive enough to overcome the weakness in the other factors.

In considering the alleged harassing conduct Plaintiff asserts in light of "all of the circumstances" of the case, the Court does not find Defendants' behavior to be severe enough to sustain Plaintiff's Title VII claim.  Here, the most offensive portion of Ryan's alleged actions, putting Plaintiff's pay check down his pants and telling her to grab it, pales in comparison to other conduct found to be severe enough to create a hostile work environment. See, e.g. Henderson v. Simmons Foods, Inc., 217 F.3d 612, 616 (8th Cir. 2000)(groping and shoving broom handle in crotch); Bailey v. Runyon, 167 F.3d 466, 467 (8th Cir. 1999)(grabbing crotch); Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1067 (10th Cir. 1998)(putting mouth on breast); Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1018 (7th Cir.1996)(grabbing breast and rubbing buttocks); Varner v. Nat'l Super Markets, Inc., 94 F.3d 1209, 1211 (8th Cir. 1996)(grabbing breasts); Waltman v. Int'l Paper Co., 875 F.2d 468, 472 (5th Cir. 1989)(grabbing breasts and directing high pressure hose at

crotch); Hall v. Gus Construction Co., Inc., 842 F.2d 1010, 1012 (8th Cir. 1988)(rubbing thighs and grabbing breasts); Bohen v. City of East Chicago, 799 F.2d 1180, 1182 (7th Cir. 1986)(pressing hands against crotch); Jones v. Wesco Invs., 846 F.2d 1154, 1155 (8th Cir.1986)(touching breasts, putting hand up dress, pinching and patting buttocks, and kissing on lips).

"To assert a Title VII claim based on a hostile work environment, a plaintiff must allege a 'pattern of ongoing and persistent harassment severe enough to alter the conditions of employment. The working environment must 'both subjectively and objectively be perceived as abusive' because of the harassment." Burrell v. Star Nursery, Inc., 170 F.3d 951, 955 (9th Cir. 1999). A careful consideration of the instant case in light of all of the circumstances demonstrates that Plaintiff's claims of harassment are insufficient to sustain a Title VII claim. This is evidenced by the fact that Plaintiff volunteered to be transferred to Store #210, back under Mr. Ryan's direct supervision. Under both an objective and subjective standard, had Plaintiff found Ryan's behavior to be so offensive, she would not have willingly volunteered to work for him. Plaintiff argues that she had some worry she might lose her job if she did not volunteer, however an examination of the record does not support this theory. Plaintiff admits that she was never threatened with dismissal or termination if she did not transfer to the #210 store. Instead, when Hartwell asked the employees of Store #136 if any were willing to transfer, Fair volunteered.

The record also reflects that upon learning that Ryan had put Plaintiff's pay check down his pants and attempted to give her an unwanted hug, Mr. Hartwell immediately gave Plaintiff the rest of the day off, delivered her pay check, and asked her to report to a different store for her next shift. Considering all of the circumstances of the immediate case, the Court finds that Plaintiff's allegations do not rise to the level of severity or pervasiveness sufficient to sustain her Title VII claim.

Furthermore, the Court finds that Defendant Terrible Herbst has successfully asserted an affirmative defense under the Supreme Court's reasoning in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). These cases

establish a two-part affirmative defense that will excuse an employer from vicarious liability for a supervisor's sexually harassing behavior when no adverse employment action has been taken. See id. The two-step affirmative defense provides that a claim for relief is barred if the defendant (1) can prove by a preponderance of the evidence that the employer exercised reasonable care to prevent and promptly correct any harassing, discriminatory, or retaliatory behavior, such as "providing a proven mechanism for reporting and resolving complaints," and (2) that the plaintiff/employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm or mitigate damages otherwise.

As discussed above, the Court has established that Plaintiff was not subject to an adverse employment action in relation to her claims of sexual harassment/discrimination. To the contrary, as a result of her complaint to Hartwell regarding Defendant Ryan's behavior, she was immediately transferred back to her place of previous employment, and away from Ryan—a transfer she fails to argue had any adverse effect on her employment. As stated above, Plaintiff's termination was ultimately due to her refusal to take a requested drug test.

Plaintiff's deposition testimony indicates that Terrible Herbst had a company internal complaint reporting hotline that employees could call, that Plaintiff knew how to use the company complaint line, and that indeed, Plaintiff used the line to report complaints on more than one occasion. Defendant Terrible Herbst has also established that it required all employees in managerial positions take a sexual harassment training class. The evidence also suggests that all individuals in managerial positions receive a handout that accompanies the sexual harassment class.

In spite of Plaintiff's use of the complaint hotline to report being called a "nigger" when employed at the store located on Nellis Boulevard and Charleston Boulevard, Plaintiff admits that she did not make complaints regarding Mr. Ryan's initial alleged behavior—chasing her around the store, telling jokes, and touching her buttocks. Although at the time of her transfer back to Ryan's supervision Plaintiff did report his alleged misconduct to Hartwell, it cannot be overlooked that she willingly volunteered to be transferred back under Ryan's direct supervision at the #210 Store.

Plaintiff's deposition testimony indicated that Plaintiff had some worry that she might lose her job if she did not volunteer, however, a review of the record does not comport with this theory. Plaintiff was never threatened with dismissal or termination if she did not transfer to the #210 store. Finally, the Court takes into account that immediately—the very same day—upon receiving Plaintiff's complaint about Ryan's behavior, Hartwell gave Plaintiff her pay check, sent her home for the day, and had her transferred to the #136 store.

In light of the evidence before it, the Court finds that Defendant Terrible Herbst has successfully asserted an affirmative defense under the Supreme Court's reasoning in Faragher, 524 U.S. 775 (1998), and Ellerth, 524 U.S. 742 (1998). Therefore because the Court finds that Plaintiff's allegations do not rise to a level of severity and pervasiveness to sustain a Title VII claim, and because Defendants have successfully pled the Faragher/Ellerth affirmative defense, the Court grants Defendant's Motion for Summary Judgment in regard to Plaintiffs first and third causes of action for harassment /discrimination.

### B. Plaintiff's Tort Claims

Plaintiff asserts that Defendant Terrible Herbst violated its duty to screen and hire only capable and qualified individuals to serve as supervisors in its offices, and to train, warn, and advise its supervisors and employees adequately to refrain from sexual discrimination, harassment, and intimidation. Plaintiff also asserts that she has suffered severe and extreme emotional distress due to Defendants' "oppressive and malicious conduct."

#### 1. Negligent hiring/retention/supervision

To support a cause of action for negligent hiring, a plaintiff must prove that defendant/employer "hire[d] an employee even though the employer knew, or should have known, of that employee's dangerous propensities." Hall v. SSF, Inc., 930 P.2d 94, 98 (Nev. 1996). Here, Defendant has proffered evidence that Mr. Ryan was required to, and indeed did attend a managerial sexual harassment training course on May 29, 2003. Plaintiff's Response (#24) acknowledges that Ryan received the training, yet argues that the training "was not effective at all" (Pl.'s Reply at 10).

Plaintiff offers no evidence supporting her claim that Defendants violated a duty of care by hiring Mr. Ryan, or that Defendants had any reason to know that Mr. Ryan may have had dangerous propensities. To the contrary, Plaintiff failed to report Ryan's initial alleged discriminatory behavior, and upon disclosing her concerns about Ryan to Hartwell, immediately volunteered to go back and work under Ryan's supervision again. Though it may be argued that Hartwell should have taken precautions against Ryan upon hearing Plaintiff's complaint, the Court finds Plaintiff's alleged behavior—volunteering to transfer to Ryan's store—to be contradictory of her alleged concerns regarding Ryan's supervision. For these reasons, the Court finds no issue of material fact that Defendant was negligent in its hiring or retaining of Ryan during the time period of Plaintiff's allegations. Therefore the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's fourth cause of action for negligent hiring/retention/supervision claim.

### 2. Intentional Infliction of Emotional Stress

Plaintiff has also brought a claim for the tort of outrage, alleging that the company's acts and practices caused her to suffer "severe and extreme emotional distress." In Nevada, the tort of outrage is synonymous with a cause of action for intentional infliction of emotional distress. <u>Falline v. GNLV Corp.</u>, 823 P.2d 888, 894 (Nev. 1991). To maintain a claim for intentional infliction of emotional distress, a plaintiff must produce evidence of (1) extreme and outrageous conduct, with (2) either the intention of, or reckless disregard for, causing emotional distress, (3) the suffering of severe or extreme emotional distress, and (4) actual or proximate causation. <u>Posadas v. City of Reno</u>, 851 P.2d 428, 444 (Nev. 1993)(citing <u>Star v. Rabello</u>, 625 P.2d 90 (Nev. 1981)).

Conduct is considered extreme or outrageous when it is "'outside all possible bounds of decency,' and is regarded as 'utterly intolerable in a civilized community.'" <u>Maduike v. Agency Rent-A-Car</u>, 953 P.2d 24, 26 (Nev. 1988). Here, Plaintiff alleges that Ryan's conduct of putting Plaintiff's pay check down his pants and telling her to get it, as well as unwantedly pressing up against Plaintiff is conduct sufficiently outrageous to sustain her claim of intentional infliction of emotional distress. Defendant Terrible Herbst sidesteps Plaintiff's argument regarding Ryan, and

argues that its behavior in terminating Ms. Fair was not outrageous.  Here, the Court agrees, that Ms. Fair's termination was not outrageous behavior for the reasons described above.  However, the Court is not convinced that Mr. Ryan's alleged behavior was not extreme or outrageous.  Mr. Ryan was in a position of authority over Plaintiff as her work supervisor, and as such, was in a position to affect Plaintiff's interest.  However, recognizing that a material fact may exist regarding whether Defendant Ryan's behavior may qualify as outrageous, the Court finds that this factor is outweighed by the lack of evidence that Plaintiff suffered any severe or extreme emotional distress.

As stated above, to sustain a cause of action for intentional infliction of emotional distress, Plaintiff must prove that she suffered severe or extreme emotional distress. Here, Plaintiff has proffered no evidence supporting her claim that she suffered severe and extreme emotional distress, and that such distress is caused by the alleged outrageous conduct.  Therefore, the Court finds no genuine issue of material fact that would preclude it granting summary judgment on Plaintiff's fifth cause of action for the tort of outrage, or intentional infliction of emotional distress.

IV.  Conclusion

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment on all claims. Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#21) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court shall enter **JUDGMENT** for Defendant.

DATED this 17th day of April 2007.

_____
Kent J. Dawson
United States District Judge